**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

**In re:** **Case No.: 16-10327-RAM**
**Chapter 7**

**SHARON PEDROSA,**

**Debtor.**
_______________________________

**PNC BANK, N.A.,**

**Plaintiff.**

**v.** **Adv.Proc.No.:**

**SHARON PEDROSA,**

**Defendant.**
________________________________/

**COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. § 727**

PNC Bank, N.A., (hereinafter referred to "PNC" or "Plaintiff"), by and through undersigned counsel, hereby sues the Defendant, Sharon Pedrosa (hereinafter referred to as "Debtor" or "Defendant"), pursuant to Bankruptcy Rule 7001, and alleges upon information and belief as follows:

**GENERAL ALLEGATIONS**

1. This is an adversary proceeding brought by PNC objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A) & (J).

3. The Debtor filed the above-captioned main bankruptcy case as a Chapter 7 proceeding on January 8, 2016.

4. PNC is a joint creditor of the Debtor and her spouse, Ricardo Pedrosa.

**Pre-petition Debt owed to PNC Bank, N.A.**

5. Ricardo Pedrosa and the Debtor have owned and operated numerous real estate businesses throughout Broward and Miami-Dade County, Florida, including but not limited to Lauren Enterprises, LLC and The Home Mortgage Specialist, LLC.

6. Lauren Enterprises, LLC employed one person and was formed to own and lease 14 commercial condominium units.

7. As explained in detail below, to fund the operation of Lauren Enterprises, LLC, Ricardo Pedrosa and the Debtor borrowed large sums of money from PNC Bank, N.A., as successor-by-merger to RBC Centura Bank ("RBC"). Ricardo Pedrosa and the Debtor personally guaranteed repayment of the debt.

8. In 2007, RBC extended a commercial loan to Lauren Enterprises, LLC, (the "Loan") pursuant to a Business Loan Agreement dated April 19, 2007 and a Promissory Note April 19, 2007 in the original principal amount of $3,851,350.00, as amended by that Change in Terms Agreement dated October 14, 2008, repayment of which was secured by a Mortgage dated April 19, 2007, which was recorded in the Official Records of Broward County, Florida, at Book 43981, Page 1609, a Commercial Guaranty dated April 19, 2007 executed by The Home Mortgage Specialist, LLC, a Commercial Guaranty dated April 19, 2007 executed by Ricardo Pedrosa, and a Commercial Guaranty dated April 19, 2007 executed by the Debtor, Sharon Pedrosa (collectively, the "Loan Documents").

9. RBC Centura Bank subsequently changed its name to RBC Bank (USA) by virtue of the Articles of Amendment dated March 13, 2008, which were filed with the Florida Secretary of State (the "Articles of Amendment"), and effective March 2, 2012, RBC Bank (USA) was merged with and into PNC Bank, N.A. ("PNC"). As a result of the merger, PNC became the owner of the Loan Documents.

10. Lauren Enterprises, LLC, The Home Mortgage Specialist, LLC, Ricardo Pedrosa, and Sharon Pedrosa (the "Obligors") defaulted under the Loan Documents for their failure to make payment due on October 16, 2009, and all payments thereafter.

11. The Debtor has failed to make any payment to PNC in almost seven years, but collected

12. On or about June 13, 2011, RBC delivered to the Obligors a demand letter (the "Demand Letter"), notifying them that they were in default under the terms of the Loan Documents and demanding payment of the full amount of the debt due thereunder.

13. On or about July 18, 2011, RBC filed a Verified Complaint against Obligors in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "State Court"), seeking a monetary judgment against the Obligors and mortgage foreclosure for the Obligors' defaults under the Loan Documents (the "Lawsuit"). The Lawsuit was assigned case number 11-018014.

14. Compounding their defaults during the pendency of the Lawsuit, Ricardo and Sharon Pedrosa (the "Pedrosas"), through Lauren Enterprises LLC, generally mismanaged the subject real property, refused to turn over rents collected and owed to PNC as required by the Loan Documents, had failed to pay over $400,000 in real estate taxes due for years 2009 through

2013, and allowed the imposition of a fine and lien against the subject real property for continuously violating the Florida Building Code. As a result, the State Court appointed a receiver over the subject real property by court order dated July 9, 2014 (the "Receiver").

15. Pedrosas collected and pocketed hundreds of thousands of dollars from the operation of the condominium units owned by Lauren Enterprises LLC but refused to make any payment to PNC on the mortgage debt, or pay any real estate taxes, for over five years, from 2009 through December 2014. According to the tax returns filed by the Pedrosas on behalf of Lauren Enterprises, LLC, from 2009 through 2013, the Pedrosas disbursed to themselves hundreds of thousands of dollars, including PNC's rent collateral, rather than paying any of the mortgage debt owed to PNC or even paying real estate taxes related to the real property owned by Lauren Enterprises, LLC. In annual operating reports provided by the Pedrosas to PNC, the Pedrosas falsely included the payment of real estate taxes as an operating expense.

16. On July 9, 2014, the State Court entered its Final Judgment (the "Final Judgment"), determining that the Obligors owe PNC a total amount of $6,954,416.76 bearing interest at the current rate of 4.75%. A true and correct copy of the Final Judgment is attached hereto as Exhibit A.

17. On July 21, 2014, the Pedrosas caused Lauren Enterprises, LLC to file for bankruptcy under chapter 11, assigned case number 14-26385-JKO (the "Bankruptcy Case"). The Bankruptcy Case was filed with the intent to hinder or delay the Receiver and retake possession of the subject property, and/or with the intent to hinder or delay the foreclosure sale in the Lawsuit and enforcement of PNC's claims against the Obligors. The Bankruptcy Case was dismissed on August 6, 2014 with prejudice for one year.

18. The Final Judgment set a foreclosure sale for October 7, 2014, which date was rescheduled by the Court to December 4, 2014. On December 4, 2014, a third party buyer, Ezra Group LLC was the successful bidder of the subject property, and on December 5, 2014, the Clerk of the State Court issued the Certificate of Sale evidencing that Ezra Group LLC was the winning bidder with a bid of $1,621,600.00. The Clerk of the State Court entered the Certificate of Title to Ezra Group LLC on December 16, 2014. A true and correct copy of the Certificate of Sale and Certificate of Title are attached hereto as Composite Exhibit B.

19. On March 2, 2015, PNC filed its Motion for Summary Final Judgment of Deficiency (the "Deficiency Motion"), which was initially set for hearing with the State Court on April 28, 2015.

20. On April 10, 2015, Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado LLP (SMGQ Law) filed its appearance for the Pedrosas in the Lawsuit, demanding cancellation of the April 28, 2015 hearing because the Pedrosas would be presenting an expert witness to contest the fair market value of the subject property established through the successful bid of Ezra Group LLC. Based upon the representations of SMGQ Law and the Pedrosas, the State Court rescheduled the Deficiency Motion for September 8, 2015.

21. Despite the Pedrosas' representations to the State Court, the Pedrosas never obtained an expert witness to testify or provide an opinion in opposition to the Deficiency Motion in State Court. The Pedrosas conducted no discovery whatsoever regarding the Deficiency Motion. Yet, the Pedrosas filed a motion to continue the September 8, 2015 hearing on the grounds that they needed "sufficient time to complete discovery on this matter."

22. The State Court cancelled the September 8, 2015 hearing, and directed PNC and the Pedrosas to schedule the Deficiency Motion on the court's trial docket, even though the Pedrosas had no document or expert to oppose the Deficiency Motion. The Deficiency Motion was eventually scheduled for trial with the State Court on November 9, 2015.

23. The Pedrosas had no documentary evidence and no expert witness for trial on the Deficiency Motion, and their only proposed evidence to oppose the Deficiency Motion was their own testimony. PNC twice coordinated the depositions of each of the Pedrosas to occur at mutually agreeable times and locations, and the Pedrosas deliberately refused or failed to appear at each deposition.

24. The State Court unilaterally cancelled the November 9, 2015 trial, and the Pedrosas refused or failed to coordinate any further hearings with PNC, until the Debtor filed the instant bankruptcy case.

25. The Pedrosas had no legal or factual basis to oppose the Deficiency Motion, and refused to appear at multiple depositions to be questioned about the basis for their purported opposition to the Deficiency Motion, yet the Pedrosas have engaged in repeated actions in State Court to hinder and delay PNC from obtaining a deficiency judgment against the Pedrosas.

**Sharon Pedrosa's Bankruptcy Case**

26. On January 8, 2016, the Debtor filed her Voluntary Petition [ECF#1] and Statement of Financial Affairs [ECF#6]. The Debtor’s initial Schedule A disclosed an ownership interest in real property located at 260 Woodcrest Road, Key Biscayne, Florida 33141 (“Key Biscayne Property”) valued at $1,700,000.00. The Debtor’s initial Schedule B-2 disclosed an ownership interest in the “Jose Marrero & Associates, P.A. Homestead Tenancy by Entirety

(sic), Trust Account, 1200 Brickell Avenue, Miami, Florida 33130" ("Trust Account") held jointly with a value of "0.00" and a 50% ownership interest in Strawberry Park, LLC with an unknown value. The Debtor's initial Schedule I disclosed no income whatsoever between herself and her spouse, while her Schedule J disclosed monthly expenses of $2,647.92. The Debtor's initial Statement of Financial Affairs disclosed no income on Question 1, only $14.00 of income on Question 2 for the year 2013, and no payments to creditors on the Statement of Financial Affairs Question 3. The Debtor represented on Question 9 that the $2,300.00 paid to her attorney for filing this case was paid by Strawberry Park, LLC on November 6, 2015 and disclosed one transfer on October 28, 2015 on Question 10 of a 49% interest in Strawberry Park, LLC without disclosing any value received for such transfer.

27. On January 14, 2016, the Debtor filed another Voluntary Petition and Statement of Financial Affairs [ECF#10]. The Schedule A/B disclosed the Key Biscayne Property with a value of $1,700,000.00, disclosed the Trust Account as still being valued at "0.00", disclosed the same Strawberry Park, LLC 50% ownership interest as still having an unknown value, continued to disclose no income whatsoever of either herself or Ricardo Pedrosa on the Schedule I, disclosed the same monthly joint expenses on Schedule J of $2,647.92, disclosed the same total income of $14.00 for the past two years on the Statement of Financial Affairs Questions 4 and 5, disclosed no payments on Question 8, disclosed no garnishment or attachment proceedings on Question 10, and continued to disclose only the transfer of a 49% interest of Strawberry Park, LLC on Question 18 while leaving blank the section requiring the Debtor to "describe any property or payments received of debts paid in exchange".

28. On February 11, 2016, the Debtor filed an Amended Schedules and Statement of Financial Affairs [ECF#18]. For the first time, the Debtor was now disclosing on her Statement of Financial Affairs Question 18 that the real property located at 260 South Parkway, Golden Beach, Florida 33160 ("Golden Beach Property") had been sold to Alena Blinova on October 14, 2014 while stating that value received for such transfer was "first mortgage $932,983.29, Expenses Payoff to Other Amounts Due: $358,000.00, Amount Paid to Homestead Trust Account: $1,900,000.00". This amendment also disclosed for the first time that $30,410.00 was received in exchange for the Debtor's transfer of a 49% interest in Strawberry Park, LLC.

29. The Debtor's initial meeting of creditors conducted pursuant to 11 U.S.C. § 341 ("Initial Meeting of Creditors") was held on February 16, 2016 and was continued to March 17, 2016 to allow time for the Debtor to provide a copy of motor vehicle insurance policies, documentation relating to the potential claim listed on Schedule B, bank statements of the Debtor for the past two (2) years, tax returns for entities listed on the Statement of Financial Affairs Question 27 or proof that such entities do not exist or had been dissolved, settlement statements on the Golden Beach Property and for Key Biscayne Property, as well as other documents. The Trustee requested that all requested documents be produced to the Trustee no later than March 7, 2016, to which the Debtor consented through counsel.

30. At the Initial Meeting of Creditors on February 16, 2016 the Debtor testified that herself and her husband, Ricardo Pedrosa, were earning no income as would be required to list on the Schedule I, that the Key Biscayne Property was a house with three bedrooms, with no safe in the house, that she lived in the Key Biscayne Property for over a year, that she was involved in no law suits, that she sold the Golden Beach Property for approximately $1,400,000.00 which

she did not acknowledge was sold for $4,800,000.00 until confronted with this fact by the Trustee, that she and her husband temporarily vacated the Key Biscayne property for repairs and remodeling, that the Strawberry Park, LLC condominium had decreased a lot in value, that Roxana Pio had never owned an interest in Strawberry Park, LLC prior to purchasing the Debtor's interest, and that the condominium held by Strawberry Park, LLC had never been rented out.

31. At the continued Meeting of Creditors on March 17, 2016 the Debtor testified to having moved out of the Key Biscayne Property so that repairs could be made to the property and testified that she was living with her mother. The Debtor further testified that no loan was provided to the buyer of the Golden Beach Property while her attorney then stated on the record that there was in fact a short term mortgage taken back from the sale of that property. The Debtor testified to not knowing whether or not the mortgage had been fully paid and further stated that she had filed whatever amendments needed to be filed to her Schedules and Statement of Financial Affairs.

32. The Debtor signed her Voluntary Petitions, Schedules, Statement of Financial Affairs, and all Amended Schedules and Amended Statement of Financial Affairs under penalty of perjury.

33. The Debtor's Schedules and Statement of Financial Affairs and all Amended Schedules and Statement of Financial Affairs contained certain omissions and false statements.

34. The Debtor testified at her Rule 2004 held on March 24, 2016 ("Rule 2004") that she is a student pursuing a Psy.D – a doctorate degree in psychology, along with her extensive educational background, degrees and certifications.

35. At the Debtor's Rule 2004 of March 24, 2016 the Debtor was presented with the Exhibit A attached to the Rule 2004 examination notice sent out on March 2, 2016 and was asked about what she did in order to obtain the required documentation. The Debtor testified that she had read through the notice before the examination and that she was the person who provided the required documents to her attorney that were produced at the examination. Beginning on page 23, line 14 to 25, the Debtor, through her counsel, presented the Trustee's counsel with Merrill Lynch brokerage account statements. Attached hereto as Exhibit C is a true and correct copy of the April 2015 Merrill Lynch 4510 account statement that was provided to the Trustee's counsel on that date.

36. The Debtor testified at her Rule 2004 examination of March 24, 2016 that the net proceeds from the sale of the Golden Beach Property went into an escrow account of Jose Marrero, that she was not building a new home but was instead remodeling the existing home, and that she was putting the amount of money that she was into the home because she liked that house. The Debtor further testified that the specific repairs that were being made were plumbing repairs and repairs to the kitchen, and that all of her furniture was within the Key Biscayne Property.

37. The Debtor went on to testify at her Rule 2004 examination of March 24, 2016 that she is unemployed, does not make any money, and that her husband tries to make money, but she did not know where her husband went during the day because she was not with him.

38. On April 6, 2016, the Trustee's counsel sent a letter to the Debtor's counsel outlining the documentation and information which had not been produced by the Debtor as of

that date. A true and correct copy of the Trustee's counsel's April 6, 2016 letter is attached hereto as Exhibit D.

39. In the April 6, 2016 letter, the Trustee's counsel specifically sought the following documents:

(i) 2014 and 2015 Strawberry Park, LLC tax returns;

(ii) 2014 through recent date Strawberry Park bank records;

(iii) A copy of the Strawberry Park appraisal – stating that this had been provided office by email on April 5;

(iv) A copy of any listing agreement and/or lease agreement that exists for Strawberry Park for any time during the past year through to the present date;

(v) Any papers of any type demonstrating what the Debtor did with the approximate $30,000.00 received for her interest in Strawberry Park – Certain checks that had been provided from by email on in April were as follows: $8,471.00 payable to the U.S. Treasury, the $6,000.00 check payable to Strawberry Park, LLC, and the $1,300.00 check payable to Dubrow, Duker & Associates, P.A.; therefore, missing were documents demonstrating what happened to the balance of $14,229.00;

(vi) An explanation as to the various post petition disposition of funds from the Debtor's bank account, including transfers to Home Away for over $2,000.00 for January and February 2016;

(vii) All bank records for the homestead bank account and any other account which contains or contained the proceeds from the sale of the prior home and the mortgage receivable;

(viii) A complete copy of the contract with the contractor on the current home;

(ix) The specific itemization of all furniture given to the Debtor's mother;

(x) A copy of the Debtor's 2015 tax return once filed;

(xi) An explanation and supporting documentation as to THMS Properties, as well as documentation and an explanation as to all entities on SOFA #27

since it is not possible to determine whether or not any of these entities still exist;

(xii) Documentation demonstrating whether real property taxes have been paid on the Debtor's current home since it was purchased through to the present date.

40. Since April 6, 2016 multiple emails were sent and received between the Trustee's counsel, the Debtor's counsel, and an attorney from SMGQ Law, Peter Gonzalez, purporting to represent Mr. Pedrosa, who stated he would be compiling the missing documents.

41. The following documents were then produced by the Debtor after the Trustee's counsel's April 6, 2016 letter to the Debtor's counsel:

(i) THMS corporate documents:
 Articles of Incorporation
 2014 Partnership Tax Return
 2013 Partnership Tax Return
 Assignment of Employer Identification Number
 Letter dated April 1, 2016 from Jose Marrero Associates
 Re Wells Fargo Bank v. Sharon Pedrosa, et al. with list of case details

(ii) Appraisal of 1260 Village Road, Avon, Colorado

(iii) Construction contract between Ricardo and Sharon Pedrosa and P&C General Contractors regarding 260 Woodcrest Road, Key Biscayne, Florida

(iv) 2014 Colorado Individual Tax Form 104

(v) 2014 Strawberry Park, LLC Colorado Pass-Through Entity And Composite Nonresident Income Tax Form 106

(vi) 2014 Strawberry Park, LLC Florida Partnership Information Return

(vii) 2014 Strawberry park, LLC Partnership Tax Return

42. On April 15, 2016, the Trustee was provided by the Debtor with a "Detail by Account" of the subject Trust Account which appears to indicate that the balance in the account was zero as of the date of this bankruptcy filing. A copy of the "Detail by Account" is attached hereto as Exhibit E. Such printout appeared to be consistent not only with the information contained on the Schedules as to no money remaining in the Trust Account on the bankruptcy filing but was also consistent with representations made by the Debtor's counsel at the Rule 2004 examination, which the Debtor later corroborated during such examination.

43. On April 21, 2016, the Debtor filed her Amended Schedule A/B, I, and Statement of Financial Affairs [ECF#53]. This amended court paper disclosed that the Debtor also obtained a "Purchase Money Mortgage (Short Term): $1,600,000.00" from the sale of the Golden Beach Property and that $30,410.00 was obtained in exchange for the transfer of a 49% ownership interest in Strawberry Park, LLC. The Amended Schedule I disclosed that the Debtor had in fact received rental income of $3,495.00 a month and that her husband had earned $400 a month as a mortgage broker and $74.33 from interest and dividends.

44. On April 27, 2016, at the request of the Debtor's counsel, the Trustee's counsel provided an inventory of the documents received from the Debtor's counsel since the March 24, 2016 deposition. A true and correct copy of the inventory is attached hereto as Exhibit F.

45. In spite of the Trustee's repeated attempts to obtain documentation, he was required to file the *Trustee's Motion to Compel Production of Documents, For Sanctions, and Motion in Limine* on May 25, 2016 (DE#68) ("Motion to Compel") because the Debtor had still failed and refused to produce the following documents:

(i) 2015 tax return of Strawberry Park, LLC;

(ii) 2014 through recent date Strawberry Park bank records;

(iii) A copy of any listing agreement and/or lease agreement that exists for Strawberry Park for any time during the past year through to the present date;

(iv) Any papers of any type demonstrating what the Debtor did with the approximate $30,000.00 received for her interest in Strawberry Park. The Debtor did provide a copy of the following checks: $8,471.00 payable to the U.S. Treasury, a $6,000.00 check payable to Strawberry Park, LLC; and a $1,300.00 check payable to Dubrow, Duker & Associates, P.A. These checks total $15,771.00. Therefore, the Trustee still needed documents demonstrating what happened to the balance of $14,229.00;

(v) An explanation as to the various post petition disposition of funds from the Debtor's bank account, including transfers to Home Away for over $2,000.00 for January and February 2016;

(vi) All bank records for the homestead bank account and any other account which contains the proceeds from the sale of the prior home and the mortgage receivable;

(vii) The specific itemization of all furniture given to the Debtor's mother;

(viii) A copy of the Debtor's 2015 tax return;

(ix) Documentation and an explanation as to all entities listed on the Debtor's Statement of Financial Affairs, question 27;

(x) Documentation demonstrating whether real property taxes have been paid on the Debtor's current home since it was purchased through the present date.

46. On May 26, 2016, after having had the Debtor fail to provide necessary documentation, the Trustee was required to file numerous subpoenas and deposition notices in order to depose Jose Marrero and P & C General Contractors, LLC (DE#71, 72, 73, 74).

47. On June 8, 2016 the Trustee followed up with the subpoena and deposition notice of Ricardo Pedrosa (DE#75 and 76).

48. On June 8, 2016, in response to the Trustee's Motion to Compel, the Debtor's counsel provided the Trustee's counsel with a "Client Trust Statement" allegedly for the subject Trust Account which for the first time disclosed to the Trustee that there was in fact $1,085,629.59 being held by Mr. Marrero on the date of the bankruptcy filing, that three (3) days before the bankruptcy filing a transfer of $279,136.50 was made from the account and that post petition transfers were made from the account totaling $190,620.00. A true and correct copy of the Client Trust Statement is attached hereto as Exhibit G.

49. The Client Trust Statement also discloses the following transfers within one (1) year of the bankruptcy filing:

(i) Check dated May 5, 2015 payable to P and C General Contractor in the amount of $15,000.00;

(ii) Check dated June 9, 2015 payable to P and C General Contractor in the amount of $35,000.00;

(iii) Check dated June 9, 2015 payable to P and C General Contractor in the amount of $30,000.00;

(iv) Check dated September 10, 2015 payable to P and C General Contractor in the amount of $30,000.00;

(v) Check dated October 29, 2015 payable to P and C General Contractor in the amount of $119,158.04;

(vi) Check dated January 5, 2016 (three days before the bankruptcy filing) payable to P and C General Contractor in the amount of $279,136.50;

(vii) Check dated April 12, 2016 (post-petition) payable to P and C General Contractor in the amount of $95,350.00;

(viii) Check dated May 20, 2016 (post-petition) payable to P and C General Contractors in the amount of $95,270.00; and

(ix) Check dated December 11, 2015 in the amount of $23,452.05 payable to Miami-Dade Tax Collector.

50. On June 10, 2016, the Trustee filed the Trustee's Emergency Partial Objection to Claimed Exemptions and Application for Turnover from Debtor and Jose Marrero (DE#77) ("Objection to Exemptions"). The Objection to Exemptions pointed out to the Court that until June 8, 2016 all representations to the Trustee, including through documentation and testimony, was that no money remained in the possession, custody or control of Jose Marrero.

51. On June 10, 2016, the Debtor filed her Amended Schedule A/B and C [DE#80] where she disclosed that the Trust Account actually held $895,009.59 which she was claiming as exempt as homestead pursuant to Article X, Section 4(a)(1) and Florida Statutes Sections 222.01 and 222.02 on her amended Schedule C.

52. On June 15, 2016 the Trustee filed amended Rule 2004 Examination Duces Tecum notices changing deposition dates and/or locations of Mr. Pedrosa, P & C General Contractors, LLC and Jose Marrero (DE#84, 85, 86, and 91).

53. On June 16, 2016 hearings were held before the Bankruptcy Court on the Motion to Compel and the Objection to Exemptions, which resulted in the Court entering an order granting the Motion to Compel and awarding fees (DE#96) pursuant to its order of June 20, 2016. By the date of the aforementioned hearings, the primary missing documentation that had still not been produced to the Trustee was the actual bank records for Mr. Marrero's Trust Account.

54. As of the June 16, 2016 hearings, all representations made to the Court and to the Trustee were that the net closing proceeds from the sale of the Golden Beach Property went directly to the Trust Account of Jose Marrero. In actuality, this was not the case. The net

proceeds from the sale of the Golden Beach Property went to the Debtor and Mr. Pedrosa into a Merrill Lynch brokerage account.

55. As a result of the hearing of June 16, 2016, the Court also entered its Order (1) Reserving Ruling on Objection; (2) Setting Further Hearing and Briefing Schedule; and (3) Freezing Trust Account Pending Further Order (DE#98) ("Scheduling Order").

56. On June 21, 2016 the Trustee's counsel was notified for the first time that the net proceeds from the closing of the sale of the Golden Beach Property in fact did not go into the Trust Account but instead went into a Merrill Lynch brokerage account. On that same date, the Trustee's counsel was provided with a copy of a cancelled check for $100,000.00 demonstrating that the initial deposit of funds into the Trust Account was money borrowed from Merrill Lynch on an account that was secured against money obtained from the sale of the Golden Beach Property. A true and correct copy of the check for $100,000.00 is attached hereto as Exhibit H.

57. On the morning of June 22, 2016, just prior to the deposition of Jose Marrero, the Trustee's counsel was provided what was represented to be all of the applicable Merrill Lynch account statements demonstrating the receipt of the net proceeds from the sale of the Golden Beach Property to the Trust Account of Jose Marrero. Missing from such statements were any account statements for the Merrill Lynch account ending in 4510. The exhibit that was marked as Exhibit "25" at Mr. Marrero's deposition contains his most recent explanation as to funds received and disbursed by him. A true and correct copy of such exhibit is attached hereto as Exhibit I.

58. On June 27, 2016, the Trustee's counsel took the Rule 2004 examination of Ricardo Pedrosa. Mr. Pedrosa was required to produce similar documentation as had been

requested of the Debtor, including bank records tracing the net proceeds from the sale of the Golden Beach Property into the Key Biscayne Property. At such examination, and prior to same, no documentation was provided for a Merrill Lynch account 4510 for April 2015 which disclosed any funds coming from other Merrill Lynch accounts into account 4510 and which disclosed funds coming out of the Merrill Lynch account 4510 to the Trust Account of Jose Marrero. The Trustee's counsel showed a copy of the April 2015 account statement for Merrill Lynch account 4510 that had been provided to him by the Debtor at her March 24, 2016 Rule 2004 examination to Mr. Pedrosa, which was marked as exhibit "22" at such examination. A true and correct copy of what was marked is attached hereto as Exhibit J.

59. On June 30, 2016, as follow up from Mr. Pedrosa's deposition, his counsel sent to the Trustee's counsel copies of many months of account statements for Merrill Lynch account 4510, which included a copy of the April 2015 statement. A true and correct copy of the April 2015 account statement for Merrill Lynch account 4510 which was provided to the Trustee's counsel on June 30, 2016 is attached hereto as Exhibit K.

60. As is evidenced on the face of the copies of the Merrill Lynch account 4510 statements for April 2015, the information disclosing the receipt of any of the funds the Debtor has claimed as being traceable to the Golden Beach Property is completely missing from the copy of the statement provided to the Trustee by the Debtor at her March 24, 2016 Rule 2004 examination.

61. The alleged copy of the Merrill Lynch account 4510 April 2015 statement provided to the Trustee's counsel by the Debtor at her March 24, 2016 Rule 2004 examination is

a document that was knowingly and fraudulently mutilated and falsified, and, contains false entries of recorded information relating to the Debtor's property or financial affairs.

62. The false copy of the Merrill Lynch account 4510 April 2015 statement demonstrates that the Debtor has mutilated and falsified recorded information from which the Debtor's financial condition or business transactions might be ascertained.

63. The removal by the Debtor of the financial information on the false copy of the Merrill Lynch account 4510 April 2015 statement was a knowing and fraudulent withholding from the Trustee of recorded information relating to the Debtor's property or financial affairs.

64. Throughout these proceedings, the Debtor has represented that all of the net proceeds from the sale of the Golden Beach Property were paid directly from closing to the trust account of an attorney, Jose Marrero. By way of example, but not limitation, the Debtor's amended Statement of Financial Affairs dated February 11, 2016 (DE#18) question 18 represents that $1,900,000.00 was "paid to homestead trust account". In truth and in fact, such representations were false. The net proceeds from the sale of the Golden Beach Property went into a Merrill Lynch account held by the Debtor and Mr. Pedrosa, which was subsequently pledged against a Bank of America line of credit prior to any of such funds being transferred to the Trust Account of Jose Marrero.

65. On April 16, 2015, the Debtor and her non-debtor husband transferred the amount of $1,712,500.00 in exchange for the Key Biscayne Property. Attached hereto as Exhibit L is a true and correct copy of the settlement statement. The Debtor has failed to disclose this transfer anywhere on her Schedules or Statement of Financial Affairs or any amendments to same.

66. The "Client Trust Statement" discloses a transfer three (3) days before the bankruptcy filing of a check for $279,136.50 along with post petition transfers equaling $190,620.00. The Debtor's Statement of Financial Affairs, questions 6, 8, and 18 and all amendments to same, fail to disclose these pre-petition transfers of funds.

67. Such concealment and transfers referenced above had been effected by the Debtor with the intent to hinder, delay, or defraud one or more of the Debtor's creditors (both pre- and post-petition) and the Trustee (post-petition).

68. As evidenced by the history alleged above, the Trustee's counsel had been seeking throughout this case for the documentation as to the bank account where the money obtained from the sale of the Key Biscayne Property was being held. The evidence that the Trustee eventually obtained demonstrating that there was over $1 million dollars remaining in the Trust Account on the bankruptcy filing date specifically contradicts every Schedule B filed by the Debtor until such time as the Debtor amended the Schedule B on June 10, 2016, and even then only disclosed the amount of funds believed to be remaining after approximately $190,000.00 was spent from the account post petition. Such actions demonstrate that the Debtor has transferred and concealed property of the estate after the filing of this bankruptcy with the actual intend to hinder, delay or defraud the Trustee and creditors, and that the Debtor has transferred or concealed property of the Debtor within one year before the date of filing the bankruptcy petition.

69. The Debtor has concealed money in the Trust Account, and has spent over $190,000.00 post petition without Bankruptcy Court approval or knowledge. Such concealment and transfers were done with the intent to hinder, delay, or defraud creditors and the Trustee.

70. Prior to the transfers in October 2015, the Debtor held a 99% membership interest in Strawberry Park, LLC ("Strawberry Park"). On October 23, 2015 the Debtor transferred a 49% membership interest in Strawberry Park to Roxana Isabel Pio, as Trustee of the Roxana Isabel Pio Revocable Trust dated 11/18/2009, as amended ("Roxana Pio, as Trustee"). Attached hereto as Exhibit M is a true and correct copy of the Assignment of Membership Interest in Strawberry Park, LLC. Such transfer of a 49% stock interest ("Transfer") also included the transfer of a 1% interest of the non-Debtor husband to Roxana Pio, as Trustee. Attached hereto as Exhibit N is a true and correct copy of the Closing Statement for the Sale of 50% Membership Interest of Strawberry Park, LLC, which discloses that the purchase price for the 49% membership interest of the Debtor was $30,410.00, and the purchase price for the 1% membership interest of the non-debtor husband was $621.00. These funds received from the sale of the membership interests in Strawberry Park were not disclosed on the Statement of Financial Affairs until the Debtor amended same on February 11, 2016 (DE#18).

71. From the funds obtained from the transfer of the ownership interest in Strawberry Park, LLC, the Trustee was eventually able to confirm that the following transfers of such funds were made by or on behalf of the Debtor: Lee J. Osiason, P.A. was paid $5,000.00, Strawberry Park, LLC was paid $6,000.00, The United States Treasury was paid $8,471.00 for income taxes, Dubrow Duker &Associates PA was paid $1,300.00, Lee J. Osiason, P.A. was paid $2,542.30, and Victor K. Rones, P.A. was paid $7,717.70. All such transfers occurred on or after October 23, 2015.

72. As it relates to all of the subsequent transfers of the funds after receiving $30,410.00 for her 49% interest in Strawberry Park, LLC referenced above, the Debtor failed to disclose any of the transfers anywhere on her Schedules or Statement of Financial Affairs or on any amendments to same.

73. The transfer of a 49% interest in Strawberry Park, LLC was made by the Debtor in contemplation of the filing of this bankruptcy proceeding and made solely to prevent the Trustee and/or creditors from being able to administer the 49% membership interest within Strawberry Park.

74. Contrary to the Debtor's testimony at her Meeting of Creditors, Strawberry Park owns real property located at 1280 Village Road, #419, Avon, Colorado 81620 ("Strawberry Park Real Property") which it has rented to third parties. In the year 2015, the gross rental income was $54,815.00. The Debtor testified falsely as to the receipt of rental income and failed to disclose the receipt of such funds until after having turned over tax returns to the Trustee which required her to amend her Schedules on April 21, 2016 to disclose same (DE#53).

75. The Strawberry Park Real Property was on the market to be sold for $1.25 million dollars as of the date of the filing of this bankruptcy.

76. Plaintiff reserves the right to amend or supplement this Complaint as discovery progresses.

**COUNT I - DENIAL OF DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(2)(A)**

77. The Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

78. Pursuant to 11 U.S.C. §727(a)(2)(A), the Court shall grant a debtor a discharge, unless:

> The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

> property of the debtor, within one year before the date of the filing of the petition.

79. The concealment of funds in an attorney's trust account of over $1 million dollars on the date of the bankruptcy filing, the Debtor's transfer of $279,136.50 within three (3) days from the date of the bankruptcy filing, the transfer of the Debtor's 49% membership interest in Strawberry Park, the concealment and transfer of the funds received from that transfer, the transfer of $5,000.00 to Lee J. Osiason, P.A., the transfer of $6,000.00 to Strawberry Park, LLC, the transfer of $8,471.00 to The United States Treasury for income taxes, the transfer of $1,300.00 to Dubrow Duker & Associates, P.A., the transfer of $2,542.30 to Lee J. Osiason, P.A., the transfer of $7,717.70 to Victor K. Rones, P.A., the transfer of $23,452.05 to the Miami-Dade Tax Collector for real estate taxes, the transfers to P & C General Contractors totaling $847,571.24, the transfer of $1,712,500.00 in exchange for the Key Biscayne property, within one (1) year of the bankruptcy filing were all transfers and concealments done with the actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under Title 11.

80. To whatever extent the Court finds that there were any pre-petition transfers, removals, and/or concealments of assets owned by the Debtor, not limited to those alleged above, such transfers, removals, and/or concealments were done with the actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under Title 11.

81. The Debtor has transferred, removed, and/or concealed or has permitted to be transferred, removed, and/or concealed, property of the Debtor, within less than one (1) year before the date of the filing of the bankruptcy petition.

82. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A) as a result of these transfers, removals, and/or concealments.

WHEREFORE, PNC Bank, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

**COUNT II - DENIAL OF DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(2)(B)**

83. The Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

84. Pursuant to 11 U.S.C. §727(a)(2)(B), the Court shall grant a debtor a discharge, unless:

> "The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - property of the estate, after the date of the filing of the petition."

85. The Debtor's post petition transfers and concealment of funds equaling $190,620.00 was a concealment and transfer of estate property done with actual fraudulent intent. Such action by the Debtor constitutes the transfer, removal, and/or concealment of assets of the estate with the intent to hinder, delay, or defraud creditors and/or the Trustee.

86. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B) as a result of this transfer, removal, and/or concealment of property of the estate post petition.

WHEREFORE, PNC BANK, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

**COUNT III - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)**

87. The Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

88. Pursuant to 11 U.S.C. § 727(a)(3), the Court shall grant a debtor a discharge unless:

> "The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

89. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve relevant documentation as is necessary pursuant to 11 U.S.C. § 727(a)(3) in order to ascertain her financial condition or business transactions.

90. There is insufficient recorded information in which to ascertain all of the Debtor's financial condition or business transactions based upon missing or insufficient documentation.

91. There is also insufficient recorded information in which to ascertain the Debtor's financial condition or business transactions based upon the fact that the Debtor is indebted to

unsecured creditors for at least $5 million dollars, without sufficient documentation to demonstrate the disposition of assets to support such debt.

92. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve certain recorded information, including books, documents, records, and papers from which the Debtor's financial condition or business transactions might be ascertained.

93. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve many records regarding one or more of her businesses.

94. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) as a result of her actions.

WHEREFORE, PNC Bank, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

**COUNT IV - DENIAL OF DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(4)(A)**

95. The Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

96. Pursuant to 11 U.S.C. § 727(a)(4)(A), a debtor shall not receive a discharge if the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

97. On or about the January 8, 2016, on all of the other dates of the signing of her bankruptcy Schedules, Statement of Financial Affairs, amended Schedules, and amended Statement of Financial Affairs, and pursuant to her testimony within her Initial Meeting of Creditors, Concluded Meeting of Creditors, and her Rule 2004 Examination in this case, the Debtor knowingly and fraudulently made false oaths or accounts in connection with this case.

98. Under penalty of perjury, the Debtor certified that her Schedules, Statement of Financial Affairs, amended Schedules, and amended Statement of Financial Affairs were true and correct.

99. In truth and in fact, as the Debtor well knew, her Schedules, Statement of Financial Affairs, amended Schedules, and/or amended Statement of Financial Affairs contained numerous material omissions and false statements.

100. The Debtor's material omissions and false statements, as provided more specifically in the preceding paragraphs, include, but are not limited to:

(a) Failure to disclose anywhere on her Schedules or Statement of Financial Affairs the existence of over $1 million dollars in Jose Marrero's Trust Account;

(b) Failure to disclose the "Purchase Money Mortgage (Short Term) held on the Golden Beach property;

(c) Failure to disclose that the net closing proceeds from the sale of the Golden Beach Property went to the Debtor and the debtor-husband into a Merrill Lynch brokerage account;

(d) Failure to disclose the transfer of over $279,136.50 three (3) days before the bankruptcy filing;

(e) Failure to disclose post petition transfers from the subject Trust Account in the amount of $190,620.00;

(f) Failure to disclose the transfer of over $1.6 million dollars into the purchase of the Key Biscayne Property;

(g) Failure to disclose the various transfers of funds obtained from her sale of a 40% interest in Strawberry Park, LLC;

(h) Failure to disclose rental income received from the Strawberry Park, LLC real property;

(i) Failure to disclose the transfers in the amount of $847,571.24 to P and C General Contractor; and

(j) Failure to disclose the transfer in the amount of $23,452.05 to the Miami-Dade Tax Collector.

101. As provided within 28 U.S.C. § 1746 certifications made by the Debtor, with regard to the information discussed in the previous paragraph and in other paragraphs above in this Complaint, had the same force and effect of an oath.

102. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) as a result of her actions.

WHEREFORE, PNC Bank, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

**COUNT V - DENIAL OF DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(4)(D)**

103. The Trustee realleges paragraphs 1 through 76 as if fully set forth herein.

104. Pursuant to 11 U.S.C. § 727(a)(4)(D), a debtor shall not receive a discharge if:

> The debtor knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

105. The Debtor failed and/or refused at multiple times during the pendency of this case to turn over all documentation, and as otherwise demonstrated by her conduct, has knowingly and fraudulently, in or in connection with the case withheld from the Trustee recorded information including, but not limited to the following at various times during the pendency of this case:

(a) Bank account information for the funds held in the attorney's Trust Account;

(b) The actual unaltered Merrill Lynch account 4510 April 2015 statement;

(c) 2014 and 2015 Strawberry Park, LLC tax returns;

(d) 2014 through recent date Strawberry Park bank records;

(e) A copy of the Strawberry Park appraisal – stating that this had been provided office by email on April 5;

(f) A copy of any listing agreement and/or lease agreement that exists for Strawberry Park for any time during the past year through to the present date;

(g) Any papers of any type demonstrating what the Debtor did with the approximate $30,000.00 received for her interest in Strawberry Park – Certain checks that had been provided from by email on in April were as follows: $8,471.00 payable to the U.S. Treasury, the $6,000.00 check payable to Strawberry Park, LLC, and the $1,300.00 check payable to Dubrow, Duker & Associates, P.A.; therefore, missing were documents demonstrating what happened to the balance of $14,229.00;

(h) An explanation as to the various post petition disposition of funds from the Debtor's bank account, including transfers to Home Away for over $2,000.00 for January and February 2016;

(i) All bank records for the homestead bank account and any other account which contains or contained the proceeds from the sale of the prior home and the mortgage receivable;

(j) A complete copy of the contract with the contractor on the current home;

(k) The specific itemization of all furniture given to the Debtor's mother;

(l) A copy of the Debtor's 2015 tax return once filed;

(m) An explanation and supporting documentation as to THMS Properties, as well as documentation and an explanation as to all entities on SOFA #27 since it is not possible to determine whether or not any of these entities still exist;

(n) Documentation demonstrating whether real property taxes have been paid on the Debtor's current home since it was purchased through to the present date.

(o) THMS corporate documents:
Articles of Incorporation
2014 Partnership Tax Return
2013 Partnership Tax Return
Assignment of Employer Identification Number
Letter dated April 1, 2016 from Jose Marrero Associates
Re Wells Fargo Bank v. Sharon Pedrosa, et al. with list of case details

(p) Appraisal of 1260 Village Road, Avon, Colorado

(q) Construction contract between Ricardo and Sharon Pedrosa and Sharon Pedrosa and P&C General Contractors regarding 260 Woodcrest Road, Key Biscayne, Florida

(r) 2014 Colorado Individual Tax Form 104

(s) 2014 Strawberry Park, LLC Colorado Pass-Through Entity And Composite Nonresident Income Tax Form 106

(t) 2014 Strawberry Park, LLC Florida Partnership Information Return

(u) 2014 Strawberry park, LLC Partnership Tax Return

106. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(D) as a result of her actions.

WHEREFORE, PNC Bank, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

## COUNT VI - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(5)

107. The Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

108. Pursuant to 11 U.S.C. § 727(a)(5), the Court shall grant a debtor a discharge unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities such as, but not limited to:

(a) The transfer of the Debtor's 49% membership interest in Strawberry Park;

(b) The concealment of over $1 million dollars in an attorney Trust Account;

(c) The concealment of the "Purchase Money Mortgage (Short Term) held on the Golden Beach property;

(c) The concealment of the fact that the net closing proceeds from the sale of the Golden Beach Property went to the Debtor and the debtor-husband into a Merrill Lynch brokerage account;

(d) The transfer of over $279,136.50 three (3) days before the bankruptcy filing;

(e) The concealment of post petition transfers from the subject Trust Account in the amount of $190,620.00;

(f) The concealment of over $1.6 million dollars that was used to purchase of the Key Biscayne Property;

(g) The concealment of the various transfers of funds obtained from her sale of a 49% interest in Strawberry Park, LLC;

(h) The concealment of rental income received from the Strawberry Park, LLC real property;

(i) The concealment of the transfers in the amount of $847,571.24 to P and C General Contractor; and

(j) The concealment of the transfer in the amount of $23,452.05 to the Miami-Dade Tax Collector.

109. The Debtor has incurred liabilities to unsecured creditors of in excess of $5 million dollars. The Debtor cannot demonstrate a loss of assets or deficiency of assets to meet these liabilities nor can she adequately explain how assets were lost and/or used.

110. It is clear that the Debtor has substantial unpaid liabilities which do not correspond with her assets that existed as of the date of filing bankruptcy.

111. Sharon Pedrosa's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5) as a result of her failure to explain satisfactorily the loss of assets or deficiency of assets to meet the Debtor's liabilities.

WHEREFORE, PNC Bank, N.A., by and through undersigned counsel, respectfully requests that the Court enter judgment denying the discharge of Sharon Pedrosa, plus that the Court grant such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated: August 1, 2016

Respectfully submitted,

*/s/ Jonathan M. Sykes*______________________

Jonathan M. Sykes, Esquire
Florida Bar No. 73176
Email: jsykes@burr.com
BURR & FORMAN LLP
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6636
Facsimile: (407) 540-6601
Attorneys for PNC Bank, National Association